PEDRO N. IBANEZ, PRO SE
US Navy (ret)
29915 Mira Loma Dr. Unit 29
Temecula, Riverside County
CA 92592
Admrpeter@yahoo.com

IN THE US COURT OF APPEALS

WASHINGTON DC.

| | |
|---|---|
| PEDRO N. IBANEZ<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant | Case No. 23-cv-0767<br><br>US COURT OF FEDERAL CLAIMS COMPLAINT FOR CONTINUING COPYRIGHT INFRINGEMENT UNDER US COPYRIGHT ACT OF 1976, 28 USC 1498(B)<br><br>JURY TRIAL DEMANDED IF ALLOWED NOTICE OF APPEAL AND BRIEF OF APPEAL |

MEMO TO CLERK OF COURT: FILE BY DEMAND

1. In Denton v. Hernandez, 504 US 25, 33 (1992)

US Supreme Court ruled:

"Because the frivolousness determination is a discretionary one, a § 1915(d) dismissal is properly reviewed for an abuse of that discretion. It would be appropriate for a court of appeals to consider, among other things, whether the plaintiff was proceeding *pro se,* whether the district court inappropriately resolved genuine issues of disputed fact, whether the court applied erroneous legal conclusions, whether the court has provided a statement explaining the dismissal that facilitates intelligent appellate review, and whether the dismissal was with or without prejudice. With respect to the last factor, the reviewing court should determine whether the district court abused its discretion by



Received – USCFC
SEP 2 5 2023

dismissing the complaint with prejudice or without leave to amend if it appears that the allegations could be remedied through more specific pleading, since dismissal under § 1915(d) could have a res judicata effect on frivolousness determinations for future *in forma pauperis* petitions."

2. Honorable Judge L. Smith committed judicial error in that the court did not resolve genuine issues of disputed facts by allowing Plaintiff to present Expert Opinion by allowing a trial where Experts in the study of economics can be issued subpoena. Therefore, honorable Judge Smith applied erroneous legal conclusions.
3. Honorable Judge Smith did not provide a statement explaining the dismissal that facilitates intelligent appellate review, for the reason that Judge Smith has no expertise in the field of Economics.

4. Honorable Judge Smith committed judicial error in not distinguishing between patents and copyright. Respectfully the court has not shown the ability to make this distinction, thus only presented 28 USC section 1498.

5. 28 USC 1498(b) (exhibit 9-3 last two paragraphs) specifically and directly gives EXCLUSIVE authority to the US Court of Federal Claims. 1498(b) is so clear cut, a rookie law student should have no doubts understanding its scope.

6. All arguments as to jurisdiction should end with 28 USC section 1498 (b).

7. Plaintiff also suspects, as his opinion, that plaintiff is caught in the middle of "internal competition" between two honorable judges, as plaintiff has chosen to quote the work of US Court of Federal Claims Judge Mary Ellen Williams.

8. As to this court's criticism of Plaintiff's "simply copying" the exhibit, plaintiff presents two published orders of this court:
   23-cv-0767 Pedro Ibanez v. USA, US Court Federal Claims
   22-40 Carlos Alford v. USA, US Court Federal Claims

In both judgment orders written by Hon. Judge Smith, lines 20 to 32 are IDENTICAL, having been simply copied, understandably to save resources.

DATED THIS 20TH DAY OF September 20, 2023

PEDRO N. IBANEZ, PRO SE
USNAVY (RET)

# Intellectual Property Suits in the United States Court of Federal Claims

**Posted on:** 2017-10-04Vol. 10 No. 1
By Judge Mary Ellen Coster Williams and Diane E. Ghrist
Published on the American Bar Association's website

Known as "the People's Court," the US Court of Federal Claims (USCFC) was created by Congress as a forum for suits against the government for monetary damages. The USCFC consists of 16 judges appointed by the president and confirmed by the US Senate for terms of 15 years. Appeals from the USCFC are resolved by the US Court of Appeals for the Federal Circuit. The USCFC is unique in the federal trial court system in that it has nationwide jurisdiction, and hears a variety of claims against the US government for money damages, including patent and copyright infringement, government contract disputes, Fifth Amendment takings, tax refund claims, tribal claims, military and civilian personnel cases, and Vaccine Act appeals.

The government has expressly waived its sovereign immunity and consented to be sued for patent infringement under 28 U.S.C. § 1498(a) and copyright infringement under 28 U.S.C. § 1498(b). With the government's use of intellectual property (IP) steadily increasing, the USCFC has seen a rise in both infringement actions and peripheral IP issues in the contract arena.1 This article outlines the USCFC's jurisdiction in IP cases, tracing its historical and legislative roots, and addresses some unique features of IP litigation in this forum, including jurisdiction, third-party practice, indemnification, and remedies.

**Eminent Domain and Taking Patent Licenses**
On June 25, 1910, Congress passed "An Act to provide additional protection for owners of patents of the United States" (1910 Act), stating in pertinent part:

That whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover reasonable compensation for such use by suit in the Court of Claims.2

Prior to the 1910 Act, the Supreme Court considered patent infringement to be a tort claim for which the government had not waived sovereign immunity.3 The Court of Claims4 heard some suits involving allegations of patent infringement on a breach of contract theory if there was proof of a contract obligating the government to pay the patent owner.5 The Supreme Court, however, recognized this situation to be an "injustice . . . as applied to rights of the character of those embraced by patents, because of the frequent possibility of their infringement by the acts of [government] officers under circumstances which would not justify the implication of a contract."6

Dubbed the "Government Use Statute," the 1910 Act created a means for patent owners to obtain money damages for the government's use of patented inventions while at the same time not restricting the government's use.7 Congress styled the 1910 Act under the theory of eminent domain, as the government's taking of a license to use a patented invention would be for the benefit of the public.8 As stated in Calhoun v. United States, "when a patented device or invention is made or used by or for the United States, [the government] ipso facto takes by eminent domain a compulsory compensable license in the patent; the patentee obtains his Fifth Amendment just compensation for that taking through his action [in the USCFC] under § 1498."9

But the 1910 Act proved to be unworkable after the Supreme Court, in William Cramp & Sons Ship & Engine Building Co. v. International Curtis Marine Turbine Co., held that a contractor could be found liable for patent infringement in connection with its performance of work for the government.10 The Court reasoned that a contractor with the United States is "bound to discharge the obligation of his contract without violating the rights of others."11 The Court continued that a mere contract with the United States does not vest a contractor with the "power to take the property of others upon the assumption that as a result of the contract with the United States he enjoys the right to exercise public and governmental powers possessed by the United States."12 The William Cramp decision opened the door for patent owners to sue federal contractors and subject them to the harsh remedies of injunctions and punitive treble damages available in district court.13

The Supreme Court decided William Cramp on March 4, 1918, in the midst of World War I. The decision immediately deterred contractors from working with the government for fear of protracted litigation, which in turn hampered the government's ability to procure patented inventions.14 These undesirable effects prompted the Acting Secretary of the Navy, Franklin D. Roosevelt, to write a letter to Congress immediately requesting the 1910 Act be amended to protect contractors from litigation. Within four months, Congress passed the 1918 version of the Government Use Statute that clarified the government's assumption of liability for a contractor's unlawful use or manufacture of a patented invention and limited a plaintiff's sole remedy to monetary compensation.15

Section 1498(a) took its present form in 1949, and retains the bedrock principles established in 1910 and 1918 of (1) defining the government's unlawful use or manufacture of patented articles as a Fifth Amendment taking of a license to use a patented invention, (2) providing government contractor immunity from patent infringement litigation, and (3) limiting available remedies to monetary damages.16 Section 1498(a) provides in pertinent part:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . . For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.17

As in the early days of the Government Use Statute, most patent infringement actions under § 1498(a) today center on wartime and national security needs. Other suits involve government-dominated research areas such as outer space exploration.18

EXHIBIT G-1

The USCFC's patent infringement actions mirror those in district court, but the USCFC exclusively holds bench trials, and government contractors are frequently third-party defendants. Like in district court, the USCFC typically holds a Markman19 hearing on claim construction before hearing infringement and validity.20 However, validity may only be raised as an affirmative defense to infringement and not as a counterclaim.21 Several judges on the USCFC use the local rules of the Northern District of California and modify those rules to comport with § 1498.22 In addition, the USCFC has a user-friendly alternative dispute resolution program that facilitates the settlement of infringement actions before the court.23

**Scope of Section 1498(a)**
As § 1498(a) infringement actions are grounded in eminent domain and not defined by statute, the scope of what constitutes the unlawful taking of a license to use a patent is a creature of case law. As such, the basis for the USCFC's jurisdiction over infringement actions must be linked to the government's taking of a patent license through its "use or manufacture" of the patented invention "without license of the owner thereof or lawful right."24 In contrast, the Patent Act—the statutory basis that governs the processes for issuing and enforcing patents before the United States Patent and Trademark Office (USPTO) and the district courts—defines patent infringement as a statutory tort in 35 U.S.C. § 271.25 Section 271(a) of the

Patent Act provides: "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In contrast, § 1498(a) only references patented inventions "used or manufactured by or for the United States" as potentially infringing acts. The relationship between infringement as a tort under the Patent Act and infringement as a Fifth Amendment taking under § 1498(a) remains a hotly litigated topic before the USCFC.26

In Decca Ltd. v. United States, the Court of Claims interpreted § 1498 to mean that the government consented to be sued for damages stemming from direct infringement by consenting to suits for its "taking of a patent license," because § 1498(a) does not give rise to government liability for activities "which fall short of direct infringement," including induced and contributory infringement, which contain intent requirements.27 In Zoltek III, the Federal Circuit further narrowed § 1498 by holding that direct infringement under § 1498(a) with respect to the United States' use or manufacture of a patented invention was predicated on § 271(a) of the Patent Act.28 Thus, other definitions of infringement under § 271, such as the importation of an infringing product under § 271(g), were not causes of action available for patent owners in suits against the government under § 1498.

However, in the 2012 en banc decision Zoltek V, the Federal Circuit abrogated Zoltek III, holding that establishing conduct falling within the definition of direct infringement codified in 35 U.S.C. § 271(a) is not a predicate to finding infringement under § 1498(a). Instead, the court concluded that the scope of § 1498(a) is "linked to the scope of the patent holder's rights as granted by the patent grant in title 35 U.S.C. section 154(a)(1)."29 In contrast to the statutory definitions of infringement in § 271, § 154(a)(1) defines the patent grant issued by the USPTO as:

the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States, and, if the invention is a process, . . . the right to exclude others from using, offering for sale or selling throughout the United States, products made by that process, referring to the specification for the particulars thereof.30

The Federal Circuit thus reverted to its pre–Zoltek III position that a § 1498 action is parallel to a title 35 action and not predicated on the statutory definitions of infringement listed in § 271 of the Patent Act.31

In Zoltek V, the appellate court emphasized that § 1498(a) is "its own independent cause of action" with three elements to trigger government liability: (1) the invention must be claimed in a patent; (2) it must be "used or manufactured by or for the United States," meaning each limitation of the claims must be present in the accused product or process; and (3) the "use or manufacture" of the patented invention must be done without license or lawful right—i.e., "use of an invention that, if done by a private party, would directly infringe the patent."32 In applying these three requirements, the Zoltek court found that a government contractor's importation into the United States of a product made by a patented process for use by the government fell within the scope of § 1498(a)'s waiver of sovereign immunity because a private party would be liable for direct infringement for such use of the imported product under 35 U.S.C. §§ 154 and 271(g).33

The Federal Circuit further stated that "[a]s the patent grant has expanded over the years, so too has the coverage of § 1498(a)," suggesting that any statutory changes to the patent grant under 35 U.S.C. § 154(a)(1) will have a corresponding effect on the scope of § 1498(a).34 As such, the Federal Circuit has recognized that § 1498(a) extends to actions "recognized as being defined by § 271(a)"35 as well as the importation of an infringing product or product made by an infringing process under § 271(g). However, the Federal Circuit has not determined whether the other types of infringement defined in 35 U.S.C. § 271(b), (c), and (f) fall within the scope of actions under § 1498.36 Walking back Decca, the Zoltek V court hinted at the possibility that § 1498(a) may extend to acts "recognized as being" defined as induced infringement under § 271(b) and contributory infringement under § 271(c), as well as infringement under § 271(f), which defines an act of infringement to be exportation of product components that, when combined abroad, would infringe a patent if the product were to be combined in the United States.37 In sum, while Zoltek V clarified that § 1498(a) must be tied to the patent grant under 35 U.S.C. § 154, the decision left open questions regarding the full extent of § 1498(a)'s waiver of sovereign immunity.

### Government Contractor Immunity

Underlying the government's assumption of liability for patent infringement under § 1498(a) is the recognition that government contractors are immune from any type of patent infringement claim in district court. Congress amended § 1498(a) in 1918, at the behest of the Secretary of the Navy to expressly provide for government contractor immunity. The statute is clear in providing that "the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States."38 The purpose behind this amendment was to enable the government to procure patented inventions without judicial interference, a goal that was achieved by barring infringement actions against contractors. Under the plain language of the statute, there are two elements a contractor must satisfy for the government to assume liability under § 1498(a). First, a contractor's use or manufacture of the invention must be "for the government," and second, the contractor must have the "authorization or consent of the government" for that use or manufacture.

### "For the Government"

In Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis, the Federal Circuit interpreted the term "for the government" to mean that the government derives a benefit from the use or manufacture of the patented technology.39 For example, the patented technology itself must be used "in furtherance and fulfillment of a stated Government policy," which would serve the government's interest, for the government's benefit.40 In contrast, if the government simply has an "interest in the program generally, or funds or reimburses all or part of its costs," that interest is too remote to support a finding of a government benefit.41 In other words, the government's mere funding of an infringing activity does not establish that such activity is "for the government" within the meaning of § 1498(a).

EXH G-2

### Authorization or Consent"

The government's authorization of or consent to a contractor's infringing activity may be express or implied.42 Federal Acquisition Regulation (FAR) 52.227-1 contains an express grant of "authorization and consent" for contractors and subcontractors for the use and manufacture of any patented invention (1) embodied in the structure or composition of any article delivered to and accepted by the government related to a government contract; or (2) used in machinery, tools, or methods necessary for a contractor to comply with the specifications of a contract, or if such use is directed by a contracting officer's specific written instructions.43 The FAR also requires a contractor to report "promptly and in reasonable written detail" to the contracting officer any claim of patent infringement of which the contractor has knowledge based on the performance of a contract.44

To succeed on an implied authorization theory there must be some explicit government action, such as a contracting officer's instruction, or evidence extrinsic to the contract language showing the government's intention to assume liability.45 In Larson v. United States, the Claims Court recognized that implied authorization "may be found under the following conditions: (1) the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement."46 The purpose behind permitting the government's authorization or consent to be implied is tied to the government's need to procure items without disruption,47 and avoid the need for government agencies to perform an exhaustive patent search for products or services they wish to procure.

For example, in TVI Energy, the Federal Circuit found implied authorization or consent where the government required a contractor to demonstrate an allegedly infringing device as part of bidding requirements under a United States military solicitation for disposable thermal targets.48 Following the demonstration, one bidder/patent owner, TVI Energy, sued a competing bidder, Blane, for patent infringement. Blane asserted immunity under § 1498(a), despite having no express letter of consent or authorization from the government to infringe any patent. The Federal Circuit nevertheless found implied authorization, stating that "[t]o limit the scope of § 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement."49 Courts have often found a contractor, through the government's implied authorization, to be immune from suit from the time it offers to supply or begin to manufacture products for the government.50

If these two elements—acting "for the government" with its "authorization or consent"—are met, then a contractor who infringes a patent in the course of its performance of work for the government, under any definition of infringement in § 271 of the Patent Act, is shielded from liability. In this respect, § 1498(a) serves as an affirmative defense available to government contractors in patent infringement actions in district court.51 Correlatively, where the government has assumed a contractor's liability, a patent owner can seek judicial relief by filing suit against the government in the USCFC.52

**Indemnification**

The FAR's patent indemnity provision provides that a contractor

shall indemnify the Government and its officers, agents, and employees against liability, including costs, for any infringement of any United States patent . . . arising out of the manufacture or delivery of supplies, the performance of services, or the construction, alteration, modification, or repair of real property . . . or out of the use or disposal by or for the account of the Government of such supplies or construction work.53

Under the FAR, the government must inform the contractor "as soon as practicable" of any action for patent infringement so that the contractor has an opportunity to participate in its defense.54 If the government fails to inform a contractor "as soon as practicable" of the pending action, the government cannot invoke the FAR's patent indemnity provision against a contractor.

To participate in its defense, a contractor may opt to join the § 1498(a) litigation as a third-party defendant. Under Rule 14(b) of the Rules of the United States Court of Federal Claims (RCFC), the court "may notify any person with the legal capacity to sue or to be sued who is alleged to have an interest in the subject matter of the suit." Further, a "person served with a notice issued . . . may file an appropriate pleading setting forth the person's interest in the subject matter of the litigation."55 In resolving a petition for mandamus, the Federal Circuit held in In re UUSI, LLC, that a third party's potential obligation to indemnify the government for any patent infringement liability provides "sufficient interest in litigation to offer evidence and advance legal arguments appropriate to protect its own interests."56 The Federal Circuit noted, however, that a third-party defendant cannot assert any counterclaims against a plaintiff, as such claims would result in litigation between private parties and "impermissibly exceed[] the scope of the Court of Federal Claims' limited jurisdiction."57

While a contractor need not participate in the § 1498 litigation, contractors should be aware that failure to appear in response to a notice under Rule 14(b) acts as a waiver of any later argument that the contractor should not indemnify the government on grounds that the USCFC incorrectly decided the patent was valid and infringed. As the USCFC held in Bowser, Inc. v. United States:

We think there is implicit in the whole plan and purpose of Subsection 14(b) a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the insistence of a third party, who had a "possible" interest in the case in this court but who failed to appear and protect his interest after timely notice or summons had been served upon him.58

**Available Remedies**

Under § 1498(a), a patent owner who successfully proves infringement is entitled to "reasonable and entire" compensation. Like the definition of infringement, the remedies available to a patentee are limited by § 1498(a)'s roots in eminent domain, not tort.59 In takings jurisprudence, "[t]he proper measure in eminent domain is what the owner has lost, not what the taker has gained," and in § 1498(a) what is taken from the patent owner is a compulsory nonexclusive license to use or manufacture the patented invention.60 As such, in § 1498 actions, "reasonable and entire compensation" is the exclusive remedy for patent infringement under § 1498(a) and is akin to just compensation under the Fifth Amendment of the Constitution. In contrast, under the Patent Act, damages are measured as either lost profits or a reasonable royalty, i.e., the amount for which the patent owner would be willing to license the patent, based on a hypothetical licensing negotiation between the patent owner and accused infringer.61

The Court of Claims explained that "reasonable and entire compensation" has two components related to a takings analysis: the first is to determine the value of the license at the time it was taken by the government, and the second involves compensating for the government's delay in paying for that license.62 To calculate the damages related to these two components, the Court of Claims has recognized three methods of valuation of the first component, license value: (1) determination of a reasonable royalty for the license; (2) awarding a percentage of government cost savings arising from governmental use of the patented invention; or (3) awarding lost profits.63 In Decca, the Court of Claims recognized that the determination of a reasonable royalty is the preferred method of valuation, applying the same case law as in district court patent infringement actions. Indeed, where the patent owner has commercially licensed its patent on terms that are the "same or substantially similar to the rights taken by the Government," the USCFC uses "virtually, without exception, the reasonable royalty method to value the license taken by the Government."64 For the second component of delay compensation, the court multiplies any accrued royalty based on the initial license value by an annual percentage rate determined on a case-by-case basis.65

Injunctive relief is not available as a primary remedy. The prospect of government contractors being subject to an injunction would disrupt the government's ability to procure its needed supplies and services.66 The USCFC may, however, issue equitable relief that is ancillary to monetary damages. For example, the court may set aside the assignment of a patent to the government where the assignment was unlawful in conjunction with a plaintiff's claim for monetary relief under § 1498(a).67 However, the term "entire" in § 1498(a) bars any option for a patent owner to obtain punitive damages against the government.68

Another wrinkle to § 1498 jurisprudence is the option to obtain damages for the government's use of a patent prior to its issuance or prior to its application's publication pursuant to required withholding under the Invention Secrecy Act, 35 U.S.C. §§ 181–188. The Invention Secrecy Act permits the government to notify the commissioner of patents to withhold "publication of the [patent] application or the grant of a patent" if the publication or disclosure of a patent application or patent might be "detrimental to the national security."69 Section 183 of the Invention Secrecy Act provides a right to compensation beginning "on the date of the first use of the invention by the Government." The patent owner can either enter into a settlement agreement with the government to obtain this compensation, seek additional compensation beyond the settlement agreement in the USCFC or district court, or wait until the patent issues and "bring suit in the United States Court of Federal Claims for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the invention resulting from his disclosure."70 In such Invention Secrecy Act cases, the USCFC remanded cases to administrative agencies to pursue settlement agreements with patent owners.71 In fiscal year 2016, the USPTO, in response to a Freedom of Information Act request, reported that 5,680 patents and patent applications are subject to secrecy orders, largely requested by the Army, Navy, and Air Force.72

**Copyright: Section 1498(b)**

Section 1498(b) governs the government's use of copyrighted works:

EXH G-3

Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of [the Copyright Act].73

Under § 1498(b), federal employees may bring actions against the government except where: (1) the employee "was in a position to order, influence, or induce use of the copyrighted work by the Government"; or (2) the copyrighted work "was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used." In Blueport Co. v. United States, the Federal Circuit held that these first two provisos are jurisdictional requirements and act as a limit on the scope and application of § 1498(b).74 Section 1498(b) also contains a third provision that before filing an action in the USCFC, the head of a government agency or a corporation owned or controlled by the states can enter into a settlement agreement with the copyright owner and "settle the claim administratively out of available appropriations."

At first blush, there are a number of similarities between copyright infringement actions under § 1498(b) and patent infringement actions under § 1498(a). As with patent infringement, the government can only be subjected to monetary damages in the form of "reasonable and entire compensation."75 Infringement of a copyright by a contractor must be "for the government" with the "authorization or consent" of the government in order to confer jurisdiction on the USCFC. There are also some stark differences between subsections (a) and (b). Unlike § 1498(a), which makes no reference to the term "patent infringement," the cause of action under § 1498(b) is explicitly called "infringement," implicating the definition of infringement under 17 U.S.C. § 106.76

Moreover, unlike patents that are exclusively a federal government property grant, there are two sources of copyright grants: the Copyright Act codified in title 17 of the United States Code and state common law. Under § 1498(b), the government has only waived sovereign immunity with respect to works "protected under the copyright laws of the United States," meaning under the copyright laws codified in title 17.77 A copyright owner is subject to certain restrictions in the Copyright Act, most significantly the requirement that the copyright be registered with the Copyright Office before bringing suit as set forth in 17 U.S.C. § 411(a).78

The USCFC has also seen copyright infringement actions related to software.79 While software can be either patented or copyrighted, the FAR contains mandatory rights that a software license agreement must confer on the government, "[n]otwithstanding any contrary provisions contained in the Contractor's standard commercial license."80 These FAR provisions are sweeping, and may be fatal to a claim of either patent or copyright infringement before the USCFC.81 FAR 52.227-19(b) provides that the "commercial computer software" delivered pursuant to a government contract "may not be used, reproduced, or disclosed by the Government," except that the commercial computer software may be: (1) used or copied for use with the computer(s) for which it was acquired, including use at any government installation to which the computer(s) may be transferred; (2) used or copied for use with a backup computer if any computer for which it was acquired is inoperative; (3) reproduced for safekeeping or backup purposes; (4) modified, adapted, or combined with other computer software; (5) disclosed to and reproduced for use by support service contractors or their subcontractors; and (6) used or copied for use with a replacement computer.82

Endnotes

1. See, e.g., Am. Safety Council, Inc. v. United States, 122 Fed. Cl. 426, 436 (2015) (preaward bid protest finding technical data rights clauses in solicitation unduly restrictive); Allied Tech. Grp., Inc. v. United States, 94 Fed. Cl. 16, 38 (2010) (upholding rejection of the plaintiff's quotation, where the plaintiff conditioned its offer on the government's acceptance of data rights provisions that conflicted with the solicitation); FN Mfg., Inc. v. United States, 44 Fed. Cl. 449, 451–52 (1999) (upholding award of a sole source supply contract, where proprietary data rights precluded competitive procurement); Authentic Apparel Grp., LLC v. United States, No. 15-16C (Fed. Cl. filed Jan. 6, 2015) (claiming breach of a trademark licensing agreement). In an appeal of a USCFC decision on claim construction, Liberty Ammunition, Inc. v. United States, 835 F.3d 1388, 1401–02 (Fed. Cir. 2016), the Federal Circuit found a nondisclosure agreement (NDA) unenforceable because the government official who entered into the NDA lacked the requisite authority to bind the government. Judge Newman dissented.

2. 36 Stat. 851 (1910).

3. Schillinger v. United States, 155 U.S. 163, 169 (1894) ("That this action is one sounding in tort is clear. It is in form one to recover damages. The petition charges a wrongful appropriation by the government, against the protest of the claimants, and prays to recover the damages done by such wrong.").

4. The Court of Claims is the predecessor to the Federal Circuit, and its body of case law prior to 1982 is binding precedent in the USCFC.

5. Crozier v. Fried. Krupp Aktiengesell-schaft, 224 U.S. 290, 304 (1912).

6. Id.

7. W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1283 (Fed. Cir. 1988) ("The patentee takes his patent from the United States subject to the government's eminent domain rights to obtain what it needs from manufacturers and to use the same."), abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391–94 (2006).

8. Crozier, 224 U.S. at 305 ("[I]n view of the public nature of the subjects with which the patents in question are concerned and the undoubted authority of the United States as to such subjects to exert the power of eminent domain, the statute, looking at the substance of things, provides for the appropriation of a license to use the invention, the appropriation thus made being sanctioned by the means of compensation for which the statute provides.").

9. 453 F.2d 1385, 1391 (Ct. Cl. 1972). The takings clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

10. 246 U.S. 28, 42–43 (1918).

11. Id. at 43.

12. Id.

13. See Zoltek Corp. v. United States (Zoltek V), 672 F.3d 1309, 1316 (Fed. Cir. 2012) (en banc) ("Now [following William Cramp], however, manufactures are exposed to expensive litigation, involving the possibilities of prohibitive injunction payments of royalties, rending of accounts, and payment of punitive damages, and they are reluctant to take contracts that may bring such severe consequences. The situation promised serious disadvantage to the public interests, and in order that vital activities of this department may not be restricted unduly at this time, and also with a view of enabling dissatisfied patentees to obtain just and adequate compensation in all cases conformably to the declared purpose of said act, I have the honor to request that the act be amended by the insertion of a proper provision therefore in the pending naval appropriation bill." (quoting Roosevelt's April 20, 1918, letter as it appears in Wood v. Atl. Gulf & Pac. Co., 296 F. 718, 720–21 (S.D. Ala. 1924))).

14. Id. (outlining the history of § 1498(a)).

15. Act of July 1, 1918, Pub. L. No. 65-182, 40 Stat. 704, 705; Zoltek V, 672 F.3d at 1316.

16. Act of May 24, 1949, Pub. L. No. 81-72, § 87, 63 Stat. 89, 102.

17. 28 U.S.C. § 1498(a).

18. See, e.g., Bondyopadhyay v. United States, 129 Fed. Cl. 793 (2017) (involving a geodesic sphere phased array antenna system for satellite communications); Ross-Hime Designs, Inc. v. United States, 126 Fed. Cl. 299 (2016) (involving a robotic manipulator used by the National Aeronautics and Space Administration).

19. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) ("[A patent] infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." (citation omitted)).

20. See, e.g., Sevenson Envtl. Servs., Inc. v. United States, 76 Fed. Cl. 51, 57–58 (2007) ("The Court's analysis in a patent infringement case involves two steps. The first step is to determine the scope and meaning of the patents in a Markman claim construction hearing. 'Claim construction' is a question of law for the Court to decide. A patent's 'claims' define the invention. The claims are the numbered paragraphs 'particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.' 35 U.S.C. § 112. The Court must look to the wording of the claims to determine the scope and meaning of the patent. In the second step, the patent claims as construed by the Court are compared to the accused device or method to determine alleged patent infringement." (citations omitted)).

21. Am. Innotek, Inc. v. United States, 128 Fed. Cl. 135, 152 (2016) (reaching the issue of validity raised as an alternative affirmative defense to infringement).

22. See, e.g., Scheduling Order, Bondyopadhyay, No. 14-147C (Fed. Cl. Feb. 10, 2017), ECF No. 198.

23. See, e.g., Joint ADR Status Report, Tritek Techs., Inc. v. United States, No. 14-451C (Fed. Cl. Dec. 23, 2015).

24. Decca Ltd. v. United States, 640 F.2d 1156, 1166–67 (Ct. Cl. 1980).

25. 35 U.S.C. § 271(a)–(c), (e)–(g); see also Decca, 640 F.2d at 1166 ("Because section 1498 authorizes the Government to take a license in any United States patent, the Government is never 'guilty' of 'direct infringement' of a patent insofar as 'direct infringement' connotes tortious or wrongful conduct."). Before the enactment of § 1498, the government would routinely contest the Court of Claims' jurisdiction to hear patent actions, as such actions traditionally sound in tort. Sean M. O'Connor, Taking, Tort, or Crown Right?: The Confused Early History of Government Patent Policy, 12 J. Marshall Rev. Intell. Prop. L. 145, 165–67 (2012). The Supreme Court also heard some congressional reference cases on the government's patent infringement. See, e.g., James v. Campbell, 104 U.S. 356, 357 (1882).

26. Though not explored in this article, the scope of defenses available to the government is also a source of litigation. As a general rule, the government is permitted to assert "all the defenses available to a private party" under § 282 of the Patent Act, as well as laches, and the medical immunity defense under § 287(c). Pratt & Whitney Can. Inc. v. United States, 12 Cl. Ct. 221, 222–23 (1987) ("[The government] has allowed itself all the defenses available to a private party, even though the plaintiff cannot avail itself of all the remedies available to a private party. Although this is indeed an asymmetrical situation, that does not render it unjust. But it should be further noted that a determination as to the wisdom of a statute is not the function of a court."); see also Avocent Redmond Corp. v. United States, 93 Fed. Cl. 399, 403 (2010) (finding laches to be an affirmative defense available to the government); Lamson v. United States, 117 Fed. Cl. 755, 761–63 (2014) (holding the medical immunity defense in § 287(c) of the Patent Act to be an available defense to the government based on Federal Circuit precedent).

27. 640 F.2d at 1167.

28. See Zoltek Corp. v. United States (Zoltek III), 442 F.3d 1345, 1350 (Fed. Cir. 2006), abrogated by Zoltek V, 672 F.3d 1309, 1322–23 (Fed. Cir. 2012) (en banc); see also NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1316 (Fed. Cir. 2005) ("[D]irect infringement under section 271(a) is a necessary predicate for government liability under section 1498."); Motorola, Inc. v. United States, 729 F.2d 765, 768 n.3 (Fed. Cir. 1984).

29. Zoltek V, 672 F.3d at 1323.

30. 35 U.S.C. § 154(a)(1).

31. Motorola, 729 F.2d at 768 ("As occurs frequently in section 1498 patent actions, the parties . . . are presenting and arguing the case as if it were an action brought under Title 35. Although concepts, phrases and words commonly used in the patent field may connote a panoply of rights and remedies under Title 35, the same concepts, phrases and words do not and cannot always connote or denote the same meaning under section 1498. Although a section 1498 action may be similar to a Title 35 action, it is nonetheless only parallel and not identical.").

32. 672 F.3d at 1321, 1323.

33. See 35 U.S.C. § 271(g) ("Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.").

34. Zoltek V, 672 F.3d at 1323.

35. Id. at 1327. The government's sales of and offers to sell a patented invention defined as direct infringement under § 271(a) are not within the scope of § 1498 actions. In de Graffenried v. United States, 25 Cl. Ct. 209, 216 (1992), that court held that the government's sale of or offers to sell a patented invention do not constitute infringement under § 1498(a) because "Section 1498 does not specifically authorize suits against the United States in instances of a sale of a patented device," and "it would violate principles of sovereign immunity to interpret the statute as mandating compensation by the United States for such a sale."

36. Aside from § 271(e), which relates exclusively to the infringement of pharmaceutical products regulated by the Food and Drug Administration that plainly fall outside the scope of § 1498, as § 271(e) is a "highly artificial" act of infringement in which no taking of any license could have occurred. Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678 (1990) (noting that § 271(e) is "a highly artificial act of infringement" in which no manufacture, use, or sale has occurred, and only applies to pharmaceutical drugs and no other products).

37. Zoltek V, 672 F.3d at 1327 ("We do not decide the issue of indirect infringement, under §§ 271(b), (c), and (f), which is not before us."); see also Advanced Aerospace Techs., Inc. v. United States, 113 Fed. Cl. 265 (2013) (finding that post–Zoltek V, a cause of action under § 1498(a) that is recognized to be defined under § 271(f) may be viable so long as the exportation claim contains an allegation of use by the government).

38. 28 U.S.C. § 1498(a).

39. 583 F.3d 1371, 1376–77 (Fed. Cir. 2009).

40. IRIS Corp. v. Japan Airlines Corp., 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quoting Madey v. Duke Univ., 413 F. Supp. 2d 601, 607 (M.D.N.C. 2006)).

41. Larson v. United States, 26 Cl. Ct. 365, 369 (1992); see also Sheridan v. United States, 120 Fed. Cl. 127, 131 (2015).

42. TVI Energy Corp. v. Blane, 806 F.2d 1057, 1060 (Fed. Cir. 1986); Hughes Aircraft Co. v. United States, 534 F.2d 889, 901 (Ct. Cl. 1976).

43. 48 C.F.R. § 52.227-1; see also Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc., 477 F.3d 1361, 1367 (Fed. Cir. 2007); TDM Am., LLC v. United States, 83 Fed. Cl. 780, 784–86 (2008).

44. 48 C.F.R. § 52.227-2; see also Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 870 (Fed. Cir. 1997) (finding a patent owner did not engage in patent misuse by threatening an injunction lawsuit against a government contractor, despite that remedy being unavailable, because the contractor may be in the best position to report potential infringement to the government).

45. Va. Panel, 133 F.3d at 870; Larson, 26 Cl. Ct. at 370.

46. Larson, 26 Cl. Ct. at 370 (citing Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148, 150 (4th Cir. 1949); Carrier Corp. v. United States, 534 F.2d 244, 247–50 (Ct. Cl. 1976); Hughes, 534 F.2d at 897–901).

47. TVI Energy, 806 F.2d at 1060; Robishaw Eng'g Inc. v. United States, 891 F. Supp. 1134, 1145 (E.D. Va. 1995) ("[T]he policy purpose behind § 1498 is to insulate the government and its private contractors from 'lawsuits disruptive of the procurement process.'" (quoting H.R. Rep. No. 872, 82d Cong., 1st Sess. 1420 (1951), as it appears in Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1041 (9th Cir. 1983))). Similarly, so as not to disturb the procurement process, a subcontractor's use of the subcontractor's own patents in performing a contract creates an implied license for the government to use the patented invention, however, the government is not bound to make direct payments to any subcontractor. See Blais v. United States, 31 Fed. Cl. 422, 427 (1994). In the same vein, inventions made during the course of performing a government contract can result in a royalty-free license between the government and the contractor, if the "invention is so tied to the work to be done under the contract as to contribute significantly to the results anticipated by that agreement." Tech. Dev. Corp. v. United States, 597 F.2d 733, 745–46 (Ct. Cl. 1979).

48. 806 F.2d at 1060–61.

49. Id.

50. See, e.g., Robishaw, 891 F. Supp. at 1141 (citing Trojan, Inc. v. Shat-R-Shield, Inc., 885 F.2d 854, 856–57 (Fed. Cir. 1989); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1282–83 (Fed. Cir. 1988); TVI Energy, 806 F.2d at 1059–60; Stelma, Inc. v. Bridge Elecs. Co., 287 F.2d 163, 164 (3d Cir. 1961)).

51. Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis, 583 F.3d 1371, 1375 (Fed. Cir. 2009); Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1381–82 (Fed. Cir. 2002).

52. IRIS Corp. v. Japan Airlines Corp., 769 F.3d 1359, 1363 (Fed. Cir. 2014). However, various government agencies have internal processes to hear administrative claims for patent infringement. Christine Hlavka, Contractor Patent Bandits: Preventing the Government from Avoiding 28 U.S.C. § 1498 Liability for Its Contractors' Unauthorized Use of Patented Material by Outsourcing One or More Steps of the Process Abroad, 37 Pub. Cont. L.J. 321, 324–25 (2008). During the pendency of an administrative claim, the USCFC's statute of limitations may be tolled pursuant to 35 U.S.C. § 286. See Bondyopadhyay v. United States, No. 14-147C, 2015 WL 1311726, at *4–5 (Fed. Cl. Mar. 20, 2015).

53. 48 C.F.R. § 52.227-3.

54. Id.

55. RCFC 14(b), (c).

56. 549 F. App'x 964, 968 (Fed. Cir. 2013), aff'g UUSI, LLC v. United States, 110 Fed. Cl. 604 (2013).

57. Id.

58. 420 F.2d 1057, 1060 (Ct. Cl. 1970).

59. Leesona Corp. v. United States, 599 F.2d 958, 964 (Ct. Cl. 1979) ("The theory for recovery against the government for patent infringement is not analogous to that in litigation between private parties. When the government has infringed, it is deemed to have 'taken' the patent license under an eminent domain theory, and compensation is the just compensation required by the Fifth Amendment.").

60. Id. at 969 (citing United States v. Chandler-Dunbar Co., 299 U.S. 53, 76 (1913)).

61. See Ga.-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120–21 (S.D.N.Y. 1970) (outlining factors relevant to determining "the amount of a reasonable royalty for a patent license" based on "hypothetical negotiations"), modified sub nom. Ga.-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971).

62. Decca Ltd. v. United States, 640 F.2d 1156, 1167 (Ct. Cl. 1980).

63. Id.

64. Id.

65. Id. at 1168; see also Hitkansut LLC v. United States, 130 Fed. Cl. 353, 391–94 (2017).

66. Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343 (1928) ("The purpose of the [1918] amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the Government and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word 'entire' emphasizes the exclusive and comprehensive character of the remedy provided.").

67. Heinemann v. United States, 620 F.2d 874, 877–78 (Ct. Cl. 1980).

68. Motorola, Inc. v. United States, 729 F.2d 765, 768 n.3 (Fed. Cir. 1984).

69. The Invention Secrecy Act provides different procedures based on whether the government has a property interest in the patent. 35 U.S.C. § 181.

70. Id. § 183; Honeywell Int'l, Inc. v. United States, 609 F.3d 1292, 1303 (Fed. Cir. 2010).

71. E.g., Linick v. United States, 96 Fed. Cl. 78, 84 (2011) ("Section 183 provides an administrative remedy to allow a claimant to receive the compensation he seeks without requiring the intervention of the judicial system. The administrative remedy is intended to assist the claimant—not to hinder his application.").

72. Steven Aftergood, Invention Secrecy Increased in 2016, Fed'n of Am. Scientists (Oct. 31, 2016), https://fas.org/blogs/secrecy/2016/10/invention-secrecy-2016/; Joshua Brustein, Congratulations, Your Genius Patent Is Now a Military Secret, Bloomberg (June 8, 2016), https://www.bloomberg.com/news/articles/2016-06-08/congratulations-your-....

73. 28 U.S.C. § 1498(b). In contrast to the USCFC's general six-year statute of limitations under 28 U.S.C. § 2501, § 1498(b) provides for a three-year statute of limitations, stating that "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action."

74. 533 F.3d 1374, 1380–81 (Fed. Cir. 2008).

75. Gaylord v. United States, 678 F.3d 1339, 1343 (Fed. Cir. 2012). Like the Copyright Act, however, § 1498(b) permits a successful copyright owner to collect "minimum statutory damages" per 17 U.S.C. § 504 in lieu of proving actual damages. Cohen v. United States, 105 Fed. Cl. 733, 752 (2012).

76. Steve Altman Photography v. United States, 18 Cl. Ct. 267 (1989) (citing Williams & Wilkins Co. v. United States, 487 F.2d 1345 (Ct. Cl. 1973), aff'd per curiam, 420 U.S. 376 (1975)); Cohen, 105 Fed. Cl. at 740–41 ("In general, to determine copyright infringement, the Court of Federal Claims examines the substantive law of copyright." (citing RT Comput. Graphics, Inc. v. United States, 44 Fed. Cl. 747, 754 (1999)).

77. Porter v. United States, 473 F.2d 1329, 1337 (5th Cir. 1973).

78. Walton v. United States, 551 F.3d 1367, 1369 (Fed. Cir. 2009).

79. See, e.g., Efficient Enter. Eng'g v. United States, No. 16-1421C (Fed. Cl. filed Oct. 27, 2016).

80. 48 C.F.R. § 52.227-19(a).

81. See David S. Bloch, "When Two Worlds Collide": Comparing Software License Boilerplate with Government Contracts, 8 Landslide, no. 3, Jan./Feb. 2016.

82. 48 C.F.R. § 52.227-19(b).

Howard T. Markey National Courts Building • 717 Madison Place, NW, Washington, DC 20439 • 202-357-6400

JUSTIA

# Denton v. Hernandez, 504 U.S. 25 (1992)

Overview Opinions Materials

**Argued:**
February 24, 1992

**Decided:**
May 4, 1992

## Syllabus

OCTOBER TERM, 1991

Syllabus

DENTON, DIRECTOR OF CORRECTIONS OF CALIFORNIA, ET AL. *v.* HERNANDEZ

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 90-1846. Argued February 24, 1992-Decided May 4,1992

Respondent Hernandez, a prisoner proceeding *pro se,* filed five civil rights suits *in forma pauperis* against petitioner California prison officials, alleging, *inter alia,* that he was drugged and homosexually raped 28 times by various inmates and prison officials at different institutions. Finding that the facts alleged appeared to be wholly fanciful, the District Court dismissed the cases under 28 U. S. C. § 1915(d), which allows courts to dismiss an *in forma pauperis* complaint "if satisfied that the action is frivolous." Reviewing the dismissals *de novo,* the Court of Appeals reversed and remanded three of the cases. The court's lead opinion concluded that a court can dismiss a complaint as factually frivolous only if the allegations conflict with judicially noticeable facts and that it was impossible to take judicial notice that none of the alleged rapes occurred; the concurring opinion concluded that Circuit precedent required that Hernandez be given notice that his claims

were to be dismissed as frivolous and a chance to amend his complaints. The Court of Appeals adhered to these positions on remand from this Court for consideration of the Court's intervening decision in *Neitzke* v. *Williams,* 490 U. S. 319, which held that an *in forma pauperis* complaint "is frivolous [under § 1915(d)] where it lacks an arguable basis either in law or in fact," *id.,* at 325.

**Read More**

## Opinions

### Opinions & Dissents

Hear Opinion Announcement - May 04, 1992

OCTOBER TERM, 1991

Syllabus

DENTON, DIRECTOR OF CORRECTIONS OF CALIFORNIA, ET AL. *v.* HERNANDEZ

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 90-1846. Argued February 24, 1992-Decided May 4,1992

Respondent Hernandez, a prisoner proceeding *pro se,* filed five civil rights suits *in forma pauperis* against petitioner California prison officials, alleging, *inter alia,* that he was drugged and homosexually raped 28 times by various inmates and prison officials at different institutions. Finding that the facts alleged appeared to be wholly fanciful, the District Court dismissed the cases under 28 U. S. C. § 1915(d), which allows courts to dismiss an *in forma pauperis* complaint "if satisfied that the action is frivolous." Reviewing the dismissals *de novo,* the Court of Appeals reversed and remanded three of the cases. The court's lead opinion concluded that a court can dismiss a complaint as factually frivolous only if the allegations conflict with judicially noticeable facts and that it was impossible to take judicial notice that none of the alleged rapes occurred; the concurring opinion concluded that Circuit precedent required that Hernandez be given notice that his claims were to be dismissed as frivolous and a chance to amend his complaints. The Court of Appeals adhered to these positions on remand from this Court for consideration of the

APPEAL,CLOSED,FEEDUE,MPLA,PRO SE

# US Court of Federal Claims
# United States Court of Federal Claims (COFC)
# CIVIL DOCKET FOR CASE #: 1:23-cv-00767-LAS
# Internal Use Only

CERTIFIED COPY
I hereby certify that this document is a true and correct copy of the original record.
UNITED STATES COURT OF FEDERAL CLAIMS
Lisa L. Reyes, Clerk of Court
By Deputy Clerk: Harold M. Wombs
Date: 4/25/2024

IBANEZ v. USA
Assigned to: Senior Judge Loren A. Smith
Demand: $1,000,000
Case in other court: 24-01113
Cause: 28:1491 Tucker Act

Date Filed: 05/23/2023
Date Terminated: 07/25/2023
Jury Demand: None
Nature of Suit: 502 Copyright
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**PEDRO N. IBANEZ** represented by **PEDRO N. IBANEZ**
29915 Mira Loma Drive
Unit 29
Temecula, CA 92592
(951) 452-0475
PRO SE

V.

**Defendant**

**USA** represented by **Rachel Hicks**
DOJ-Civ
1100 L St NW
Washington DC, DC 20005
202-514-7223
Email: rachel.hicks@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/24/2024 | 19 | ORDER from Court of Appeals for the Federal Circuit, directing Clerk to file the plaintiff's submission received on 9/25/2024 (and treated as a defect), docketed as a Notice of Appeal filed by PEDRO N. IBANEZ.(hw1) (Entered: 04/25/2024) |
| 03/01/2024 | | Transmission of Certified Updated Docket Sheet to US Court of Appeals for the Federal Circuit re 18 Notice of Appeal. Filing fee received. (hw1) (Entered: 03/01/2024) |
| 03/01/2024 | | CAFC Appeals Fee received $505, receipt number CFC 200000126 re 18 Notice of Appeal filed by PEDRO N. IBANEZ. $505.00 appeal fee accepted because the appeal was filed before the 12/1/2023 Fee Schedule change. (hw1) (Entered: 03/01/2024) |

| | | |
|---|---|---|
| 11/03/2023 | | CAFC Case Number 2024-1113 for 18 Notice of Appeal filed by PEDRO N. IBANEZ. (hw1) (Entered: 11/03/2023) |
| 10/30/2023 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 18 Notice of Appeal (hw1) (Entered: 10/30/2023) |
| 10/30/2023 | 18 | NOTICE OF APPEAL filed by PEDRO N. IBANEZ as to 13 Order directing the clerk to enter the 14 Judgment dismissing the case. Copy to CAFC. (hw1) (Entered: 10/30/2023) |
| 10/05/2023 | 17 | ORDER REJECTING DOCUMENT: Letter received on 9/25/2023. Signed by Senior Judge Loren A. Smith. (nck) Service on parties made. Modified on 10/6/2023 (ew). **Plaintiff served via first class mail**. (Entered: 10/05/2023) |
| 09/25/2023 | 20 | *Pursuant 19 CAFC Order*, the Clerk is directed to file the NOTICE OF APPEAL filed by PEDRO N. IBANEZ, as to the 13 Order of Dismissal directing the Clerk to enter the 14 Judgment. Copy to CAFC.(hw1) (Entered: 04/25/2024) |
| 08/18/2023 | 16 | ORDER denying 15 Plaintiff's Motion for Reconsideration. Signed by Senior Judge Loren A. Smith. (nck) Service on parties made; plaintiff served via first class mail. (dls) (Entered: 08/18/2023) |
| 08/01/2023 | 15 | MOTION for Reconsideration re 13 Unreported Opinion, 14 Judgment, filed by PEDRO N. IBANEZ. Service: 8/1/2023. (ew) (Entered: 08/08/2023) |
| 07/25/2023 | 14 | JUDGMENT entered, pursuant to Rule 58, dismissing plaintiff's complaint for lack of subject-matter jurisdiction. (Service on parties made; plaintiff served via first class mail. ) (dls) (Entered: 07/25/2023) |
| 07/24/2023 | 13 | Order of Dismissal. The Clerk is directed to enter judgment. Signed by Senior Judge Loren A. Smith. (nck) Service on parties made; plaintiff served via first class mail. (dls) (Entered: 07/24/2023) |
| 07/19/2023 | 12 | RESPONSE TO 7 ORDER TO SHOW CAUSE, filed by PEDRO N. IBANEZ. Service: 7/19/2023.(ew) (Entered: 07/20/2023) |
| 06/28/2023 | 11 | ORDER denying 9 Defendant's Motion to Transfer. Signed by Senior Judge Loren A. Smith. (msh) Service on parties made. Modified on 6/29/2023 (ew). **Plaintiff served via first class mail**. (Entered: 06/28/2023) |
| 06/27/2023 | 10 | NOTICE, filed by USA re 9 Notice of Directly Related Case(s), . (Hicks, Rachel) (Entered: 06/27/2023) |
| 06/23/2023 | 9 | NOTICE of Directly Related Case(s) [1:22-cv-1730-TMD, 1:22-cv-359-DLF], filed by USA *and Motion to Transfer*. (Attachments: # 1 Exhibit A (Complaint, 1:22-cv-359-DLF), # 2 Exhibit B (Complaint, 1:22-cv-1730-TMD), # 3 Exhibit C (Docket, 1:22-cv-359-DLF), # 4 Exhibit D (Dismissal Order, 1:22-cv-1730-TMD), # 5 Exhibit E (Motion, 1:22-cv-1730-TMD), # 6 Exhibit F (Response, 1:22-cv-1730-TMD))(Hicks, Rachel) (Entered: 06/23/2023) |
| 06/22/2023 | | **ENTERED IN ERROR**. ~~Filing fee received re: 1 Complaint. $ 402, receipt number CFC100005898. (ew) Modified on 6/22/2023 (ew).~~. (Entered: 06/22/2023) |
| 06/21/2023 | 8 | NOTICE of Appearance by Rachel Hicks for USA . (Hicks, Rachel) (Entered: 06/21/2023) |

| | | |
|---|---|---|
| 06/21/2023 | 7 | ORDER TO SHOW CAUSE. **Show Cause Response due by 7/21/2023.** Signed by Senior Judge Loren A. Smith. (msh) Service on parties made; plaintiff served via first class mail. (dls) (Entered: 06/21/2023) |
| 06/21/2023 | | Filing fee received. $ 402. CFC100005898. (ew) Modified on 6/22/2023 to add receipt number (cam). (Entered: 06/21/2023) |
| 05/31/2023 | 6 | ORDER to pay filing fee or submit IFP Application. **Filing Fee or IFP Application due by 6/30/2023.** Signed by Senior Judge Loren A. Smith. (nck) Service on parties made. Modified on 6/6/2023 (ew).**Plaintiff served via first class mail**. (Entered: 05/31/2023) |
| 05/26/2023 | 5 | GENERAL ORDER No. 2022-01 dated 9/12/2022 continuing the suspension of paper filing requirements in pro se cases: Consistent with this court's General Orders issued on 3/18/2020, 11/13/2020, 12/23/2020, and 3/3/2021, it is ordered that judges, special masters, the Clerk of Court, and counsel of record for the United States may file electronically in pro se cases using the court's Case Management/Electronic Case Filing (CM/ECF) system. Pro se litigants shall, absent extraordinary circumstances, submit all case filings via e-mail to ProSe_case_filings@cfc.uscourts.gov. Pro se litigants may, if feasible, receive notification by e-mail of all electronic filings by filing an E-Notification Consent Form, attached to the General Order. (ew) Service on parties made. Modified on 5/26/2023 (ew). **Documents sent to plaintiff via first class mail** (Entered: 05/26/2023) |
| 05/26/2023 | 4 | **FILING FEE DUE.** Our records indicate that a filing fee has not been received. Plaintiff must submit either the required filing fee of $402.00 **OR** an application to proceed *in forma pauperis*, which can be located under the forms link at: www.uscfc.uscourts.gov. Please contact the Clerk's Office at 202-357-6406 for any additional assistance. (ew) (Entered: 05/26/2023) |
| 05/26/2023 | 3 | NOTICE of Non-ECF Case. (ew) (Entered: 05/26/2023) |
| 05/26/2023 | 2 | Notice of Random Assignment Pursuant to Rule 40.1(a) to Judge Loren A. Smith. (ew) (Entered: 05/26/2023) |
| 05/23/2023 | 1 | COMPLAINT against USA (TRE) (Copy Served Electronically on Department of Justice), filed by PEDRO N. IBANEZ.**Answer due by 7/26/2023.** (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Envelope)(ew) (Entered: 05/26/2023) |

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

**PEDRO N. IBANEZ,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

2024-1113

Appeal from the United States Court of Federal Claims in No. 1:23-cv-00767-LAS, Senior Judge Loren A. Smith.

PER CURIAM.

**O R D E R**

The court now considers the parties' responses to the December 28, 2023 show cause order.

The Court of Federal Claims dismissed Pedro N. Ibanez's complaint and entered judgment on July 25, 2023. Mr. Ibanez's timely motion for reconsideration was denied on August 18, 2023. The Court of Federal Claims received a document from Mr. Ibanez on September 25, 2023 that was directed to the "US Court of Appeals Washington DC" and stated, among other things, "the reviewing court should determine whether the district court abused its

discretion by dismissing the complaint." ECF No. 17 at 1–2. The Court of Federal Claims rejected the filing as non-compliant. ECF No. 15 at 2 (Dkt. No. 17). Mr. Ibanez then filed a notice of appeal that was received by the United States Court of Appeals for the District of Columbia Circuit on October 23, 2023, and forwarded to, and received by, the Court of Federal Claims on October 30, 2023. *See* ECF No. 15 at 1-2 (Dkt. No. 18 et seq.).

To be timely, a notice of appeal must be received by the Court of Federal Claims within 60 days of the entry of judgment. *See* 28 U.S.C. § 2522; 28 U.S.C. § 2107(b); Fed. R. App. P. 4(a)(1)(B); Fed. Cir. R. 1(a)(1)(C). Such a notice must: (1) specify the party or parties taking the appeal by naming each one in the caption or body; (2) designate the judgment from which the appeal is taken; and (3) name the court to which the appeal is taken. *See* 28 U.S.C. § 2522; Fed. R. App. P. 3(c)(1). Although the October 2023 notice of appeal is untimely, the September 25, 2023 submission was filed within 60 days of the judgment and reconsideration order and when, liberally construed, satisfies the requirements of a notice of appeal under Rule 3.

Accordingly,

IT IS ORDERED THAT:

(1) The United States Court of Federal Claims is directed to docket Mr. Ibanez's September 25, 2023 filing as a notice of appeal received on September 25, 2023, and serve notice of the appeal to the parties and this court in accordance with Federal Rule of Appellate Procedure 3(d).

(2) This appeal remains stayed pending further notice of the court.

FOR THE COURT

April 24, 2024
Date

Jarrett B. Perlow
Clerk of Court

cc: United States Court of Federal Claims

# In the United States Court of Federal Claims

No. 23-767
Filed: August 18, 2023

| | |
|---|---|
| PEDRO N. IBANEZ, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**ORDER**

On May 23, 2023, plaintiff, proceeding *pro se*, filed a complaint with this Court. *See generally* Complaint, ECF No. 1. On July 24, 2023, the Court determined that it has no jurisdiction over plaintiff's case and dismissed the complaint pursuant to Rule 12(h)(3) of the Rules of the United States Court of Federal Claims. *See* Order Dismissing Case, ECF No. 13. On August 1, 2023, plaintiff filed a motion for reconsideration, requesting that the Court "reconsider its ruling for dismissal" and "continue to Trial." Plaintiff's Motion for Reconsideration at 1, ECF No 15. Nothing in plaintiff's Motion for Reconsideration provides this Court with an additional source of jurisdiction over plaintiff's claims. Moreover, plaintiff reproduces the text of 28 U.S.C. § 1498(b) without any providing any additional explanation as to why his claims are not factually frivolous. Accordingly, and after careful consideration, the Court hereby **DENIES** plaintiff's Motion for Reconsideration.

**IT IS SO ORDERED.**

Loren A. Smith

Loren A. Smith,
Senior Judge

Case: 24-1113 Document: 24 Page: 20 Filed: 07/25/2024

# In the United States Court of Federal Claims

No. 23-767
Filed: July 24, 2023

| | |
|---|---|
| PEDRO N. IBANEZ, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## ORDER

On May 23, 2023, plaintiff, proceeding *pro se*, filed a complaint with this Court, alleging, *inter alia*, that the Government infringed upon his copyright for his written work "NO TAXES NO POVERTY STRONG GOVERNMENT." *See generally* Complaint, ECF No. 1. Specifically, Plaintiff alleges that since 2009 the Government has copied material from the above-referenced written work on how to manipulate the money supply and how to print and distribute unlimited money. *Id.* at 2. As a result, plaintiff argues that this infringement of "his work was a substantial factor in the successful exit of the country from the Pandemic of 2020-2021." *Id.* On June 21, 2023, the Court ordered plaintiff to show cause as to why his case should not be dismissed pursuant to Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* June 21, 2023 Order, ECF No. 7. On July 19, 2023, plaintiff filed his response to the Court's Show Cause Order by reproducing the text of 28 U.S.C. § 1498. *See* Plaintiff's Response to Show Cause Order, ECF No. 12.

This Court's authority to hear cases is primarily set forth by the Tucker Act, which grants the Court of Federal Claims subject-matter jurisdiction over claims brought against the United States that are grounded on a money-mandating source of law and do not sound in tort. 28 U.S.C. § 1491(a)(1). Additionally, 28 U.S.C. § 1498 grants this Court subject-matter jurisdiction to adjudicate claims of copyright infringement by the United States. RCFC 12(h)(3) states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." R. Ct. Fed. Cl. 12(h)(3). Plaintiff has the burden of demonstrating that this Court has jurisdiction over his claims. *See Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). *Pro se* plaintiffs are given "leeway on procedural matters, such as pleading requirements," *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007), but this leniency does not lessen the plaintiff's jurisdictional burden. *See Ibrahim v. United States*, 799 Fed. Appx. 865, 867 (Fed. Cir. 2020) (citing *Kelley v. Sec'y, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)). Demonstrating this Court's jurisdiction is generally a low bar. *See, e.g., Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341

(Fed. Cir. 2021). Claims that are "factually frivolous," however, fall outside of this Court's jurisdiction. *See, e.g., Spencer v. United States*, 98 Fed. Cl. 349, 356 (2011). These are claims supported by facts that are "delusional," "clearly baseless," or "rise to the level of the irrational or the wholly incredible." *Id.* Determining whether a claim is factually frivolous is within this Court's discretion. *See id.* (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

Upon *sua sponte* review, this Court finds that plaintiff fails to plead a non-frivolous claim for relief. *See Spencer*, 98 Fed. Cl. at 356. The allegations asserted in the Complaint—that the Government "copied and implemented unique information" from plaintiff's copywritten work, which "was a substantial factor in the successful exit of the country from the Pandemic of 2020-2021"—fall into the category of "frivolous" or "clearly baseless." *See id.*; Compl. at 2. Therefore, this Court does not have jurisdiction over plaintiff's claims and must dismiss the Complaint. *See Spencer*, 98 Fed. Cl. at 356.

For the reasons set forth above, plaintiff's Complaint is **DISMISSED,** *sua sponte*, pursuant to RCFC 12(h)(3). The Clerk of Court is directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**

s/ Loren A. Smith

Loren A. Smith,
Senior Judge

PEDRO N. IBANEZ, PRO SE
USNAVY (RET)
29915 MIRA LOMA DR. UNIT 29
RIVERSIDE COUNTY
TEMECULA CA, 92592
951-452-0475
Admrpeter@yahoo.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WASHINGTON DC

| | |
|---|---|
| PEDRO N. IBANEZ, PRO SE<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA<br>Defendant | 1:23-CV-0767-LAS<br>JURY TRIAL DEMANDED IF ALLOWED<br>COMPLAINT FOR CONTINUING COPYRIGHT INFRINGEMENT UNDER US COPYRIGHT ACT OF 1976 TITLE 17 OF US CODE<br>US CODE 28 SECTION 1498(B)<br>MOTION FOR RECONSIDERATION |

MEMO TO CLERK OF COURT: FILE BY DEMAND

Plaintiff respectfully moves this honorable court to reconsider its ruling for dismissal. While the honorable Judge L. Smith has a very impressive resume in US Law, Judge Smith with all due respect HAS NO EXPERTISE IN BUSINESS AND ECOMOMICS. Judge Smith has never written a book or essay in Economics. This honorable judge is not qualified to describe Plaintiff's claims as "delusional" or "irrational."

Plaintiff requests this honorable court to continue to Trial and dismiss Plaintiff Motion for Summary judgment.

In his Complaint, plaintiff included Requests for Admissions and Subpoena for US Secretary of Treasury Janet Ellen and US Federal Reserve Chair Jerome Powell.



Received - USCFC
AUG - 1 2023

This Lady Secretary and Chairman Jerome Powell are the Experts who are qualified to state if Plaintiff is "delusional" or "irrational", or if plaintiff is protecting his intellectual property.

Plaintiff did not expand on excerpt of US code 28 section 1498(b) since it plainly states "... whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor or any Person, firm or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement ... "

US code 28 section 1498(b) mandates that US Court of Federal Claims is exclusive forum for copyright infringement against US government contractors, agents and employees.

Tucker Act and little Tucker Act are money limitations.

Dated this 27th day of July 2023

PEDRO N. IBANEZ, PRO SE
USNAVY (RET)

# In the United States Court of Federal Claims

| | |
|---|---|
| PEDRO N. IBANEZ, Plaintiff(s), v. THE UNITED STATES, Defendant. | No. 23-767 |

For the reasons specified in the attached deficiency memorandum, the attached submission shall be:

- ☐ Filed by my leave.
- ☐ Filed by my leave and the filing shall be titled ______________________________.
- ☐ Filed by my leave and the party is being notified for the correction of the following defect(s) in all future filings: ____________________________________.
- ☐ Filed by my leave and the party is required to file a redacted version of the document for the public record (Rule 5.2).
- ☐ Returned to the party for the correction of defects. The party shall re-file the corrected document on or before __________________________. Opposing counsel's time to respond to the filing is to run from the date of re-service.
- ☐ Returned to the party unfiled.
- ☑ Rejected.

IT IS SO ORDERED.

Loren A. Smith
Judge

10/5/2023
Date

Docket No. 23-767

**UNITED STATES COURT OF FEDERAL CLAIMS**

**DEFICIENCY MEMORANDUM**

**TO:** Judge Smith

**FROM:** CLERK'S OFFICE

**CASE NAME:** Ibanez v US

**DOCUMENT TITLE:** US Courts of Federal Claims Complaint for Continuing Cc

The attached was received on 9/25/2023 and the following defect(s) is/are noted:

1. ☐ Untimely, due to be filed by __________ [Rule 7.2].
2. ☐ Proof of service: [Rule 5.3]
   ☐ is missing; ☐ is not signed and/or dated; shows
   ☐ service on wrong attorney or of wrong item.
3. ☐ Not signed by the attorney or party of record [Rules 11 and 83.1(c)(2)].
4. ☑ Does not comply with the provisions of Rule:

| | | |
|---|---|---|
| ☐ | 5.2(a) | Re: redacted filings [PrivacyProtection] |
| ☐ | 5.4(a)(2)(A) | Re: table of contents or index to appendix is missing (or in wrong location) |
| ☐ | 5.4(b) | Re: length of briefs or memorandum |
| ☐ | 5.5(d)(2) | Re: copies missing |
| ☐ | 5.5(g) | Re: Judge's name on all filings |
| ☐ | 10(a) | Re: incorrect caption; names of parties |
| ☐ | 24(c) | Re: motion to be accompanied by a pleading |

5. ☐ Original affidavit(s)/declaration(s) is/are missing.
6. ☑ No provision in the rules (or court order) for the filing of this item.
7. ☐ Please advise. Thanks.

EW
Deputy Clerk's Initials

*Revised February 2020*

**Query** **Reports** **Utilities** **Help** **Log Out**

APPEAL,CLOSED,MPLA,PRO SE

# US Court of Federal Claims
# United States Court of Federal Claims (COFC)
# CIVIL DOCKET FOR CASE #: 1:23-cv-00767-LAS

IBANEZ v. USA
Assigned to: Senior Judge Loren A. Smith
Demand: $1,000,000
Case in other court: 24-01113
Cause: 28:1491 Tucker Act

Date Filed: 05/23/2023
Date Terminated: 07/25/2023
Jury Demand: None
Nature of Suit: 502 Copyright
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**PEDRO N. IBANEZ**

represented by **PEDRO N. IBANEZ**
29915 Mira Loma Drive
Unit 29
Temecula, CA 92592
(951) 452-0475
PRO SE

V.

**Defendant**

**USA**

represented by **Rachel Hicks**
DOJ-Civ
1100 L St NW
Washington DC, DC 20005
202-514-7223
Email: rachel.hicks@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/23/2023 | 1 | COMPLAINT against USA (TRE) (Copy Served Electronically on Department of Justice), filed by PEDRO N. IBANEZ.**Answer due by 7/26/2023.** (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Envelope)(ew) (Entered: 05/26/2023) |
| 05/26/2023 | 2 | Notice of Random Assignment Pursuant to Rule 40.1(a) to Judge Loren A. Smith. (ew) (Entered: 05/26/2023) |
| 05/26/2023 | 3 | NOTICE of Non-ECF Case. (ew) (Entered: 05/26/2023) |
| 05/26/2023 | 4 | **FILING FEE DUE.** Our records indicate that a filing fee has not been received. Plaintiff must submit either the required filing fee of $402.00 **OR** an application to proceed *in forma pauperis*, which can be located under the forms link at: www.uscfc.uscourts.gov. Please contact the Clerk's Office at 202-357-6406 for any additional assistance. (ew) (Entered: 05/26/2023) |

| | | |
|---|---|---|
| 05/26/2023 | 5 | GENERAL ORDER No. 2022-01 dated 9/12/2022 continuing the suspension of paper filing requirements in pro se cases: Consistent with this court's General Orders issued on 3/18/2020, 11/13/2020, 12/23/2020, and 3/3/2021, it is ordered that judges, special masters, the Clerk of Court, and counsel of record for the United States may file electronically in pro se cases using the court's Case Management/Electronic Case Filing (CM/ECF) system. Pro se litigants shall, absent extraordinary circumstances, submit all case filings via e-mail to ProSe_case_filings@cfc.uscourts.gov. Pro se litigants may, if feasible, receive notification by e-mail of all electronic filings by filing an E-Notification Consent Form, attached to the General Order. (ew) Service on parties made. Modified on 5/26/2023 (ew). **Documents sent to plaintiff via first class mail** (Entered: 05/26/2023) |
| 05/31/2023 | 6 | ORDER to pay filing fee or submit IFP Application. **Filing Fee or IFP Application due by 6/30/2023.** Signed by Senior Judge Loren A. Smith. (nck) Service on parties made. Modified on 6/6/2023 (ew).**Plaintiff served via first class mail**. (Entered: 05/31/2023) |
| 06/21/2023 | | Filing fee received. $ 402. CFC100005898. (ew) Modified on 6/22/2023 to add receipt number (cam). (Entered: 06/21/2023) |
| 06/21/2023 | 7 | ORDER TO SHOW CAUSE. **Show Cause Response due by 7/21/2023.** Signed by Senior Judge Loren A. Smith. (msh) Service on parties made; plaintiff served via first class mail. (dls) (Entered: 06/21/2023) |
| 06/21/2023 | 8 | NOTICE of Appearance by Rachel Hicks for USA . (Hicks, Rachel) (Entered: 06/21/2023) |
| 06/22/2023 | | **ENTERED IN ERROR**. ~~Filing fee received re: 1 Complaint. $ 402, receipt number CFC100005898. (ew) Modified on 6/22/2023 (ew).~~. (Entered: 06/22/2023) |
| 06/23/2023 | 9 | NOTICE of Directly Related Case(s) [1:22-cv-1730-TMD, 1:22-cv-359-DLF], filed by USA *and Motion to Transfer*. (Attachments: # 1 Exhibit A (Complaint, 1:22-cv-359-DLF), # 2 Exhibit B (Complaint, 1:22-cv-1730-TMD), # 3 Exhibit C (Docket, 1:22-cv-359-DLF), # 4 Exhibit D (Dismissal Order, 1:22-cv-1730-TMD), # 5 Exhibit E (Motion, 1:22-cv-1730-TMD), # 6 Exhibit F (Response, 1:22-cv-1730-TMD))(Hicks, Rachel) (Entered: 06/23/2023) |
| 06/27/2023 | 10 | NOTICE, filed by USA re 9 Notice of Directly Related Case(s), . (Hicks, Rachel) (Entered: 06/27/2023) |
| 06/28/2023 | 11 | ORDER denying 9 Defendant's Motion to Transfer. Signed by Senior Judge Loren A. Smith. (msh) Service on parties made. Modified on 6/29/2023 (ew). **Plaintiff served via first class mail**. (Entered: 06/28/2023) |
| 07/19/2023 | 12 | RESPONSE TO 7 ORDER TO SHOW CAUSE, filed by PEDRO N. IBANEZ. Service: 7/19/2023.(ew) (Entered: 07/20/2023) |
| 07/24/2023 | 13 | Order of Dismissal. The Clerk is directed to enter judgment. Signed by Senior Judge Loren A. Smith. (nck) Service on parties made; plaintiff served via first class mail. (dls) (Entered: 07/24/2023) |
| 07/25/2023 | 14 | JUDGMENT entered, pursuant to Rule 58, dismissing plaintiff's complaint for lack of subject-matter jurisdiction. (Service on parties made; plaintiff served via first class mail. ) (dls) (Entered: 07/25/2023) |
| 08/01/2023 | 15 | MOTION for Reconsideration re 13 Unreported Opinion, 14 Judgment, filed by PEDRO N. IBANEZ. Service: 8/1/2023. (ew) (Entered: 08/08/2023) |
| 08/18/2023 | 16 | ORDER denying 15 Plaintiff's Motion for Reconsideration. Signed by Senior Judge Loren A. Smith. (nck) Service on parties made; plaintiff served via first class mail. (dls) (Entered: 08/18/2023) |

| | | |
|---|---|---|
| 09/25/2023 | 20 | *Pursuant 19 CAFC Order*, the Clerk is directed to file the NOTICE OF APPEAL filed by PEDRO N. IBANEZ, as to the 13 Order of Dismissal directing the Clerk to enter the 14 Judgment. Copy to CAFC.(hw1) (Entered: 04/25/2024) |
| 10/05/2023 | 17 | ORDER REJECTING DOCUMENT: Letter received on 9/25/2023. Signed by Senior Judge Loren A. Smith. (nck) Service on parties made. Modified on 10/6/2023 (ew). **Plaintiff served via first class mail**. (Entered: 10/05/2023) |
| 10/30/2023 | 18 | NOTICE OF APPEAL filed by PEDRO N. IBANEZ as to 13 Order directing the clerk to enter the 14 Judgment dismissing the case. Copy to CAFC. (hw1) (Entered: 10/30/2023) |
| 10/30/2023 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 18 Notice of Appeal (hw1) (Entered: 10/30/2023) |
| 11/03/2023 | | CAFC Case Number 2024-1113 for 18 Notice of Appeal filed by PEDRO N. IBANEZ. (hw1) (Entered: 11/03/2023) |
| 03/01/2024 | | CAFC Appeals Fee received $505, receipt number CFC 200000126 re 18 Notice of Appeal filed by PEDRO N. IBANEZ. $505.00 appeal fee accepted because the appeal was filed before the 12/1/2023 Fee Schedule change. (hw1) (Entered: 03/01/2024) |
| 03/01/2024 | | Transmission of Certified Updated Docket Sheet to US Court of Appeals for the Federal Circuit re 18 Notice of Appeal. Filing fee received. (hw1) (Entered: 03/01/2024) |
| 04/24/2024 | 19 | ORDER from Court of Appeals for the Federal Circuit, directing Clerk to file the plaintiff's submission received on 9/25/2024 (and treated as a defect), docketed as a Notice of Appeal filed by PEDRO N. IBANEZ.(hw1) (Entered: 04/25/2024) |
| 04/25/2024 | | Transmission of Notice of Appeal and Certified Docket Sheet to US Court of Appeals for the Federal Circuit re 20 Notice of Appeal. (hw1) (Entered: 04/25/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/03/2024 17:35:24 | | | |
| **PACER Login:** | admrpeter4444 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00767-LAS |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

PEDRO N. IBANEZ, PRO SE
US Navy (ret)
29915 MIRA LOMA DR. UNIT 29
TEMECULA, RIVERSIDE COUNTY
CALIFORNIA 92592
951-452-0475
Admrpeter@yahoo.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WASHINGTON DC

| | |
|---|---|
| PEDRO N. IBANEZ, PRO SE<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA<br>DEPARTMENT OF TREASURY<br>AND<br>UNITED STATES OF AMERICA<br>FEDERAL RESERVE SYSTEM<br>Defendants | Case No.: 23-767 T<br><br>**JURY TRIAL DEMANDED IFALLOWED COMPLAINT FOR CONTINUING COPYRIGHT INFRINGEMENT UNDER US COPYRIGHT ACT OF 1976, TITLE 17 OF US CODE** |

**MEMO TO CLERK OF COURT: FILE BY DEMAND**

## COMPLAINT

Plaintiff Ibanez wrote book "NO TAXES NO POVERTY STRONG GOVERNMENT" with copyright warning in 1998 and Registration no. TX-9-230179 with US Copyright office, dated February 17, 2023, Exh. 9-1 and 9-2. This valid Registration makes this Complaint NOT Same as prior US Court Federal Claims case 2022-cv-1730.



Received - USCFC
MAY 23 2023

Plaintiff respectfully appeal to honorable Courts fairness, courage and justice. Plaintiff Ibanez spent years researching his works and should be given the fair compensation. Plaintiff Mr. Ibanez is very proud to say that his work was a substantial factor in the successful exit of the country from the Pandemic of 2020-2021.

Plaintiff may have made some mistake in pursuing this copyright litigation. Plaintiff cites Briones v. Riviera Hotel and Casino where the pro se plaintiff Briones was given some leeway by the 9th Circuit US Appeals Court. (116 f.3D 379 9th Cir. 1996)

Defendant counsel Attorney Hicks also has committed some "unlawyerly-like" mistakes, when she sent an official court correspondence to the wrong email address, despite that my correct email is clearly written on the Complaint of 2022-cv-1730. She also used the wrong Case Number, but apologized.

Since 2009 US Government has copied and implemented unique information on Plaintiff's book – How to manipulate the money supply without incurring Hyperinflation – Print and Distribute Unlimited money following the steps detailed in Plaintiff's book and YouTube.com Blog. Court is respectfully requested to view Plaintiff's Blog by visiting YouTube.com and enter the title: WHY U.S. SOCIAL SECURITY SYSTEM WILL NOT COLLAPSE. Honorable Court is requested to accept this YouTube.com Blog as evidence.

Under US Copyright Act of 1976, and Title 17 of US Code, copyright ownership initially vests in the original author.

Plaintiff book "NO TAXES NO POVERTY STRONG GOVERNMENT" is attached as Exhibit One.

Attached also are Request for Admissions and Subpoena to Produce Documents, Information, or Objects deemed pertinent to this case.

PLAINTIFF IS WILLING TO LICENSE THIS COPYRIGHT FOR DEFENDANTS'S EXCLUSIVE USE FOR TEN YEARS, FOR THE AMOUNT OF $25,000,000.00 (Twenty Five Million Dollars) Normally, copyright and patent licensee fee is 3% (three percent of annual sales).

## JURISDICTION

Quoted from American Bar Association Website:

"Posted on 2017 -10-04, Volume 10 no. 1"

By Judge Mary Ellen Coster Williams and Diane E. Ghrist

"The government has expressly waived its sovereign immunity and consented to be sued copyright infringement under 28 USC section 1498(b). With the government's use of intellectual property on the rise in both infringement actions and peripheral IP issues in the contract arena. This article is relevant in its historical and legislative roots, and addresses some unique features of IP litigation in this forum for indemnification and remedies. " EXHIBIT B

## LIST OF EXHIBITS AND ATTACHMENTS

EXHIBIT A – IMAGE OF OLD BOOK BY PLAINTIFF

EXHIBIT ONE – COPY OF BOOK BY PLAINTIFF

EXHIBIT 2 – ARTICLE FROM [illegible] – EXPLANATION OF TERM ECONOMIS QUANTITATIVE EASING

EXHIBIT 3 – PARTIAL COPY OF U.S. MONETARY POLICY REPORT JULY 9,2021

EXHIBIT 4 – DEPT. OF JUSTICE FORM 95, CLAIM FOR DAMAGE, INJURY OR DEATH

ATTACHMENTS

1. CIVIL COVER SHEET
2. SUBPOENA TO PRODUCE DOCUMENS FOR JEROME H. POWELL, CHAIR
3. REQUEST FOR ADMISSIONS FOR JEROME H. POWELL, CHAIR
4. REQUEST FOR ADMISSIONS FOR JANET YELLEN, SECRETARY

Dated this 11th Day of MAY 2023

PEDRO N. IBANEZ, PRO SE, US Navy (ret)

# In The United States Court of Federal Claims
## Form 2
## Cover Sheet

Plaintiff(s) or Petitioner(s)

23-767 T

Names: PEDRO N. IBANEZ

Location of Plaintiff(s)/Petitioner(s) (city/state): 29915 MIRA LOMA DR. UNIT 29 TEMECULA CA 92592

(If this is a multi-plaintiff case, pursuant to RCFC 20(a), please use a separate sheet to list additional plaintiffs.)

Name of the attorney of record (See RCFC 83.1(c)): PRO SE
Firm Name: ______

Contact information for pro se plaintiff/petitioner or attorney of record:

Post Office Box: ______
Street Address: 29915 MIRA LOMA DR., UNIT 29
City-State-ZIP: TEMECULA CA 92592
Telephone Number: 951-452-0475
E-mail Address: Admrpeter@yahoo.com

Is the attorney of record admitted to the Court of Federal Claims Bar? ☐ Yes ☑ No
NA

Nature of Suit Code: 502
Select only one (three digit) nature-of-suit code from the attached sheet.

Agency Identification Code: TRE
Number of Claims Involved: 1

Amount Claimed: $25,000,000.00
Use estimate if specific amount is not pleaded

Bid Protest Case (required for NOS 138 and 140):
Indicate approximate dollar amount of procurement at issue: $ NA
Is plaintiff a small business? ☐ Yes ☐ No
Was this action proceeded by the filing of a protest before the GAO? ☐ Yes ☐ No
Solicitation No. ______
If yes, was a decision on the merits rendered? ☐ Yes ☐ No

Income Tax (Partnership) Case:
Identify partnership or partnership group: NA

Takings Case:
Specify Location of Property (city/state): NA

Vaccine Case:
Date of Vaccination: NA

Related case:
Is this case directly related to any pending or previously filed case(s) in the United States Court of Federal Claims? If yes, you are required to file a separate notice of directly related case(s). See RCRC 40.2 ☐ Yes ☑ No

# Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

United States Register of Copyrights and Director

**Registration Number**
**TX 9-230-179**
**Effective Date of Registration:**
February 17, 2023
**Registration Decision Date:**
March 03, 2023

**Copyright Registration for One Work by One Author**
Registration issued pursuant to 37 CFR §202.3

## Title

**Title of Work:** NO TAXES NO POVERTY STRONG GOVERNMENT

## Completion/Publication

**Year of Completion:** 1998
**Date of 1st Publication:** June 01, 1998
**Nation of 1st Publication:** United States

## Author

- **Author:** PEDRO NORLITO IBANEZ
**Author Created:** Nonfiction Work
**Citizen of:** United States
**Domiciled in:** United States
**Year Born:** 1952

## Copyright Claimant

**Copyright Claimant:** PEDRO NORLITO IBANEZ
29915 MIRA LOMA DR, 29, TEMECULA, CA, 92592, United States

## Rights and Permissions

**Name:** PEDRO NORLITO IBANEZ
**Email:** admrpeter@yahoo.com
**Telephone:** (951)452-0475
**Alt. Telephone:** (951)303-4799
**Address:** 29915 mira loma dr
29

EXH 9-1

Temecula, CA 92592

## Certification

**Name:** PEDRO NORLITO IBANEZ, Author/Owner
**Date:** February 01, 2023

**Copyright Office notes:** Regarding basis for registration: A work may be registered with the Single Application only if the following requirements have been met: 1) The registration covers one work; 2) The work must be created by one individual; 3) All of the material contained within the work must be created by the same individual; 4) The author and the owner of the work must be the same person, and that person must own all of the rights in the work; 5) The work cannot be a work made for hire.

EXH 9-2

# In The United States Court of Federal Claims
## Form 2
## Cover Sheet

Plaintiff(s) or Petitioner(s)

Names: PEDRO N. IBANEZ

Location of Plaintiff(s)/Petitioner(s) (city/state): 29915 MIRA LOMA DR. UNIT 29 TEMECULA CA 92592

(If this is a multi-plaintiff case, pursuant to RCFC 20(a), please use a separate sheet to list additional plaintiffs.)

Name of the attorney of record (See RCFC 83.1(c)): PRO SE
Firm Name:

Contact information for pro se plaintiff/petitioner or attorney of record:

| | |
|---|---|
| Post Office Box: | |
| Street Address: | 29915 MIRA LOMA DR., UNIT 29 |
| City-State-ZIP: | TEMECULA CA 92592 |
| Telephone Number: | 951-452-0475 |
| E-mail Address: | Admrpeter@yahoo.com |

Is the attorney of record admitted to the Court of Federal Claims Bar? ☐ Yes ☑ No
NA

Nature of Suit Code: 502
Select only one (three digit) nature-of-suit code from the attached sheet.

Agency Identification Code: TRE
Number of Claims Involved: 1

Amount Claimed: $25,000,000.00
Use estimate if specific amount is not pleaded.

Bid Protest Case (required for NOS 138 and 140):
Indicate approximate dollar amount of procurement at issue: $ NA
Is plaintiff a small business? ☐ Yes ☐ No
Was this action proceeded by the filing of a protest before the GAO? ☐ Yes ☐ No Solicitation No. ______
If yes, was a decision on the merits rendered? ☐ Yes ☐ No

Income Tax (Partnership) Case:
Identify partnership or partnership group: NA

Takings Case:
Specify Location of Property (city/state): NA

Vaccine Case:
Date of Vaccination: NA

Related case:
Is this case directly related to any pending or previously filed case(s) in the United States Court of Federal Claims? If yes, you are required to file a separate notice of directly related case(s). See RCRC 40.2. ☐ Yes ☑ No